IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANE R. HUEY, | : | No. 4:06-CV-0656 |
| Plaintiff, | : | (Judge Jones III) |
| v. | : | (Magistrate Judge Mannion) |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM

**September 18, 2007**

On August 27, 2007, Magistrate Judge Malachy E. Mannion filed a Report and Recommendation regarding Plaintiff Diane Huey's appeal of the Commissioner's decision to deny her Social Security Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433.  (Doc. 11.)  Judge Mannion recommended that the appeal be denied.  On August 23, 2007, the Huey filed objections to Judge

---

[1] Michael J. Astrue became the Acting Commissioner of Social Security, effective February 12, 2007 to succeed Linda S. McMahon.  Pursuant to Federal Rule of Civil Procedure 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

Mannion's report. (Doc. 12.) On August 24, 2007, the Commissioner filed a response to those objections. (Doc. 13.) This matter is now ripe for the Court's review. The Court will adopt the Magistrate Judge's report and deny Huey's appeal.

I.  **STANDARDS OF REVIEW**:

  A.  **Review of a Magistrate Judge's Report**

In reviewing the report of a magistrate judge, the district court makes a de novo determination with respect to those portions of the report and the findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980); *see also* Local Rule 72.3. In providing for a de novo <u>determination</u> rather than a de novo <u>hearing</u>, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations without the need to rehear testimony. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984.)

  B.  **Review of the Denial of Disability Benefits**

When reviewing the denial of disability benefits, a court must determine whether the denial is supported by substantial evidence. *Mason v. Shalala*, 994

F.2d 1058, 1064 (3d Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing *Pierce v. Underwood*, 487 U.S. 552 (1988).)

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A.)  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A.)

### C.   Eligibility Evaluation Process

A five-step evaluation process is used to determine if a claimant is eligible for disability benefits.  20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999.)  If the Commissioner finds that a claimant is not disabled at any

point in the process, the review does not proceed. 20 C.F.R. § 404.1520.

Step one requires a claimant to establish that he has not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b.) Step two is an evaluation of whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(c.) At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. § 404.1520(d.)

If the Commissioner determines that the claimant's impairment does not meet or equal a listed impairment, the Commissioner must continue to step four and consider whether the claimant has established that he is unable to perform his past relevant work. 20 C.F.R. §§ 404.1520(e)-(f.) The claimant bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428.

The burden then shifts to the Commissioner, at step five, to demonstrate that other jobs exist in significant numbers in the national economy that the claimant is able to perform, consistent with his medically determinable impairments, functional limitations, age, education, work experience, and vocational factors. 20 C.F.R. §§ 404.1520(g), 404.1560(c.)

## II. BACKGROUND

### A. Factual Background

#### 1. Personal History

Plaintiff Diane Huey alleged disability since March 28, 2002. Huey was thirty-three years old on the alleged onset date and thirty-six on the date of the ALJ's decision. (Tr. 25.) Huey is a high school graduate and completed one year of college training in nursing. (Tr. 25, 269.) Prior to her alleged disability, Huey worked as a nurse, phlebotomist, and office manager. (Tr. 23.)

Huey lives with her husband and four children, ages 1, 2, and two age 12. (Tr. 21.) Huey cares for the two youngest children, dressing and feeding them and changing their diapers. (*Id.*) Huey can essentially care for her personal needs, although she has some problems typing, snapping buttons, doing her hair, or putting on earrings. (Tr. 18, 21.) Huey only minimally helps with housework and chores; her husband and older children do the majority of the cooking, cleaning, laundry, and shopping. (Tr. 21.)

#### 2. Medical Evidence

Huey alleges disability primarily due to her back impairments, degenerative disc and joint disease of the cervical and lumbar spines, but also because of carpel tunnel syndrome (or other hand and wrist problems), and migraine headaches. The

ALJ's opinion (Tr. 18-23) and the magistrate judge's report (Doc. at 5-17) contain detailed descriptions of Huey's testimony regarding her conditions and medical evidence presented.  The Court will not repeat these details in full, but will summarize the salient facts.

Huey testified that she has a history of severe back pain, which began following her pregnancy and the birth of her third child in April 2002.  (Tr. 21.)  Huey described her pain as constant low back pain, above the buttocks which radiates down her left leg into her foot across the last three toes causing numbness and sometimes radiates into her right leg and thigh down to her knee. (Tr. 274.)  She stated that the pain is worse on some days but the left leg aches almost all the time and the numbness on her outer leg is constant.  (Tr. 21, 274-75.)  Huey indicated that she elevates her legs approximately six to seven hours per day, not including sleeping time, to relieve the pain. (Tr. 278-80.)  Huey also takes Oxycodone, Symbalta and Arthrotec.  (Tr. 22, 278-79.)

Huey also testified that she has problems with her hands and fingers.  (Tr. 18, 21.)  Huey stated that the numbness in her fingers is constant, but the tingling is intermittent. (Tr. 277.)  She claims to not have the dexterity to accomplish things she once did, such as doing her hair, working with small buttons, doing crafts, or typing for extended periods.  (Tr. 277.)

Dr. David Miller, a family practitioner and Huey's primary care physician, has been treating her back conditions since 2002, when Huey first complained of back pain. (Tr. 126-38, 171-74, 221-22.) Dr. Miller generally diagnosed Huey with chronic low back pain, left-side sciatica, and lumber and cervical disc disease, based on his physical examinations, x-rays, MRIs, and other physicians' opinions. (*See* Tr. 221-22.) Dr. Miller prescribed Huey pain medication and referred her to specialists. (Tr. 126-38, 171-74, 221-22.) Huey also presented to Dr. Miller beginning in December 2003 regarding numbness in her hands. (Tr. 129.) Dr. Miller opined that Huey might have carpel tunnel syndrome and referred her to another doctor. (Tr. 128-29, 137.)

At Dr. Miller's referral, Huey saw orthopedic surgeon Dr. David Andreychick about her back problems in April 2004. (Tr. 138, 146-48, 190-91.) Dr. Andreychick assessed that Huey had lumbar disc disease and referred her to Dr. Thomas Ranieri for pain management. (Tr. 146-47.)

Huey began treatment with Dr. Ranieri in June 2004. (Tr. 157-58.) Dr. Ranieri's impression was that Huey had intervertebral disc disease, degenerative disc disease, and lumbosacral radiculopathy. (Tr. 157.) Dr. Ranieri reported that Huey stated her back pain was currently a "4" on a 1 to 10 scale, and could be as good as a 2 or as bad as a 10. (*Id.*) Huey underwent a discogram, which revealed

intravertebral disc disease. (Tr. 159-62, 175, 178-81.) Dr. Ranieri administered a C2 injection, which provided little pain relief (Tr. 163, 169.) Over several follow-up visit, Huey described continued or increased pain, despite physical therapy, and Dr. Ranieri prescribed pain medications and reported that minimally invasive surgery would be considered. (Tr. 169, 205, 213-14.) Dr. Ranieri also referred Huey to rheumatologist Dr. Shelly Kafka for further treatment. (Tr. 214.) Upon examination, Dr. Kafka assessed possible psoriatic arthritis. (Tr. 220-25.) On a July 2004 Pennsylvania Department of Public Welfare employability assessment form Dr. Ranieri checked that Huey was "temporarily disabled" from June 6, 2004 to June 15, 2005 due to annular disruption, occipital neuralgia, and herniated lumbar discs. (Tr. 165.)

At Dr. Miller's referral, Huey also saw Dr. Thomas Pearson regarding her possible carpel tunnel syndrome. (Tr. 144-45.) Upon examination, Dr. Pearson opined that Huey "has carpal tunnel syndrome by definition in that she has the appropriate symptoms," however, Dr. Pearson noted that Huey "does not have electrophysiologic evidence of median nerve entrapment at the wrist that would warrant considerations toward decompressive surgery." (Tr. 145.) Dr. Pearson stated that Huey may benefit from vitamin B supplements, splinting, or injections of the wrist. (*Id.*)

At a follow-up visit with Dr. Ranieri, Huey also complained of "intermittent numbness and paraesthesias into the hands and fingers." (Tr. 169.) Dr. Ranieri recommended an EMG nerve conduction study. (*Id.*) Dr. Gregory Billy performed the tests, which revealed that "the median and ulnar nerves are without any slowing or evidence of compression" and "chronic B denervation/reinnervation." (Tr. 217.)

Dr. Gerald Gryczko also reviewed Huey's medical records and completed a RFC assessment form. (Tr. 149-56.) Dr. Gryczko's primary diagnosis was bulging discs, and his secondary diagnosis was carpal tunnel syndrome. (TR. 149.) Dr. Gryczko found that Huey could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; and stand or walk and sit for six hours in an eight-hour workday. (Tr. 150.) Dr. Gryczko found that Huey's ability to push or pull was limited in the upper extremities and that Huey was limited to occasional climbing and stooping. (Tr. 150, 154.) Dr. Gryczko found that Huey had no manipulative limitations in terms of reaching, handling, fingering, or feeling. (Tr. 153.) Dr. Gryczko reached his conclusions without a treating or examining source statement regarding Huey's physical capabilities. (Tr. 155.)

**B.    Procedural History**

Huey applied for disability insurance benefits and supplemental security income on November 10, 2003, alleging disability since March 28, 2002 due to

degenerative disc and joint disease of the cervical and lumbar spines.  (Tr. 17.)  After her claim was denied, Huey requested a hearing, which was held on May 2, 2005.  (*Id.*)  At the hearing, Huey also alleged disability due to carpal tunnel syndrome and migraine headaches.  (Tr. 18, 19.)

Following the five-step process for determining disability, the administrative law judge ("ALJ") found, at step one, that Huey had not engaged in substantial gainful activity since allegedly becoming disabled.  (Tr. 18.)  At step two, the ALJ determined that Huey's degenerative disc and joint disease of the cervical and lumbar spines was a severe impairment.  (*Id.*)  However, the ALJ determined that Huey's alleged carpal tunnel syndrome and migraines were not severe impairments because these conditions did not have more than a de minimis effect on Huey's ability to perform basic work activities.  (Tr. 18, 19.)  At step three, the ALJ determined that Huey's spine conditions did not meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 18.)  Based on the medical evidence and Huey's testimony, the ALJ determined, at step four, that Huey retains the residual functional capacity ("RFC") to perform work at the light exertional level and cannot climb or stoop on more than an occasional basis.  (Tr. 22.)  The ALJ also found that Huey is unable to perform her past relevant work as a nurse and office manage/phlebotomist.  (Tr. 23.)  At step five, the ALJ determined, based on

Huey's personal history and the testimony of an independent vocational expert, that Huey has the RFC to engage in work activity widely available in the local and national economy. (Tr. 24.) The ALJ therefore concluded that Huey is not disabled within the meaning of the Social Security Act. (Tr. 25.)

On appeal, Huey raises two issues. First, Huey contends that the ALJ erred in finding that her carpal tunnel syndrome is not severe and that the ALJ's determination that Huey retained the RFC to perform light work is not supported by medical evidence. (*See* Doc. 6.) The magistrate judge's report recommends that Huey's appeal be denied. (Doc. 11.)

### III. DISCUSSION

#### A. Whether the ALJ Erred in Finding That Plaintiff's Carpal Tunnel Syndrome Is Not a Severe Impairment.

Huey argues that the ALJ's finding that her carpal tunnel syndrome is not severe is contradicted by the medical evidence, particularly by some of Dr. Gryczko's opinions. (*See* Doc. 6 at 16-20.) Huey claims that the ALJ erred by adopting part of Dr. Gryczko's assessment, but rejecting the part of his opinion that supports her claim. (*Id.* at 17-18.) Citing to *McCrea v. Commissioner*, 370 F.3d 357, 360 (3d Cir. 2004), Huey argues that her burden at step two of the sequential disability determination process is minimal, and that the medical evidence presented

meets this low threshold.  (*Id.* at 18-20.)         The magistrate judge's report rejects Huey's contentions.  (*See* Doc. 11 at 18-20.)

Although a claimant's burden at step two may be not exacting, the magistrate judge correctly notes that the burden is still on the claimant to show that her impairment is severe.  Doc. 11 at 20; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).  To be severe, an impairment must significantly limit a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c), 416.920(c).  An ALJ may find that an impairment is not severe where it has "no more than a minimal effect on an individual's ability to work."  *See Newell v. Comm'r*, 347 F.3d 541, 546 (3d Cir. 2003) (quoting Social Security Ruling 85-28, 1985 SSR LEXIS 19, at *6-7).  This is precisely what the ALJ found in this case.

The ALJ reviewed the medical evidence indicating that examination and testing of Huey generally showed little or no evidence of carpal tunnel syndrome, normal muscle strength in the hands and wrists, and normal finger movement.  (Tr. 18-19, 21.)  The ALJ noted that Dr. Pearson's assessment was ambivalent, in that Huey "had" carpal tunnel syndrome because she reported symptoms but that this diagnosis was not confirmed through testing.  (Tr. 18-19).  The ALJ also noted that Huey's condition does not prevent her from engaging in many daily activities that

are inconsistent with an individual who is unable to perform substantial gainful activity.  (Tr. 21-22.)  Based on this evidence, the ALJ concluded that Huey's alleged carpal tunnel syndrome was not a severe impairment.  As did the magistrate judge, the Court finds that this conclusion is supported by substantial evidence.

Huey argues that the ALJ erred in "adopting" the assessment of Dr. Gryczko for the most part, but rejecting his opinion that Huey's ability to push or pull was limited in the upper extremities.  (Doc. 6 at 17-18.)  As an initial matter, the ALJ did not simply "adopt" the assessment of Dr. Gryczko.  The ALJ explicitly stated that Dr. Gryczko's opinion was entitled to "some weight considering it is generally consistent with the evidence in the record."  (Tr. 23.)  The ALJ noted, however, that Dr. Gryczko's opinion was "provided less weight" because Dr. Gryczko was a non-examining source.  (*Id.*)  The ALJ specifically noted that he rejected Dr. Gryczko's opinion regarding Huey's push/pull ability because it was inconsistent with the physical examinations of examining doctors.  (*Id.*)  There is no rule that an ALJ may not accept parts of a doctor's assessment and reject others.  In fact, that is what Huey would have the ALJ do by accepting Dr. Gryczko's opinion regarding Huey's push/pull ability but rejecting his conclusion that Huey retains the RFC to do light work.  An ALJ need only consider all the evidence and give some reason for discounting the evidence he rejects.  *Plummer*, 186 F.3d at 429.  That is what the

ALJ explicitly did here, and his findings regarding Dr. Gryczko's opinion were not made in error.

### B. Whether the ALJ Erred in Finding That Plaintiff Retains the Residual Functional Capacity to Perform Light Work.

Huey also argues that the ALJ erred in finding that she retains the RFC to do light work. Huey claims that this finding was error because the ALJ came to the same conclusion regarding Huey's RFC that Dr. Grycko, in part, did, and Dr. Gryczko's opinion was formed without the benefit of later medical testing. (*See* Doc. 6 at 20-21.) Like the magistrate judge, the Court finds that the ALJ's conclusion regarding Huey's RFC is supported by substantial evidence.

In determining a claimant's RFC, the ALJ must consider all the medical and non-medical evidence, weigh the credibility of the evidence, and explain his conclusions, including the reasons for rejecting certain evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); *Burnett v. Comm'r*, 220 F.3d 112, 122 (3d Cir. 2000). Here, the ALJ conducted a comprehensive evaluation of the medical evidence. (Tr. 18, 19-20, 21, 22, 23.) The ALJ also considered Huey's testimony (Tr. 21) and Huey's daily activities (Tr. 21-22).

The ALJ found that the medical evidence supported an RFC for light work. As stated above, the ALJ did not simply adopt Dr. Gryczko's assessment, but gave

his assessment "some weight" where it was consistent with medical evidence. (Tr. 23.) The ALJ rejected Dr. Ranieri's check-box conclusion that Huey was "temporarily disabled" from June 6, 2004 to June 15, 2005, and gave five specific reasons for doing so: the opinion was merely a prediction; it was inconsistent by medical assessments; it was inconsistent by treatment history; it was inconsistent with Huey's self-reported daily activity; and a physician's opinion regarding the ultimate conclusion in a disability case is not entitled to controlling weight. (Tr. 23.) The Court would also add, as the magistrate judge correctly noted, that check-box form reports, such as Dr. Ranieri's, are weak evidence at best. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993.) The ALJ also gave detailed reasons for finding Huey's subjective complaints not entirely credible, including that Huey's testimony was inconsistent with objective medical evidence, her self-reported daily activities, and her history of medication and treatment. (Tr. 20-22.) As noted by the magistrate judge, an ALJ's credibility determinations are entitled to great deference. *See, e.g.*, *Atlantic Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001); *NLRB v. Lee Hotel Corp.*, 13 F.3d 1347, 1351 (3d Cir. 1994). Here, the ALJ met his task of considering all the evidence, indicating the evidence that supports his conclusion, and indicating the reasons for rejecting contrary evidence. The Court finds no reversible error.

## IV.	CONCLUSION

For the foregoing reasons, the Court shall adopt the Report and Recommendation of Magistrate Judge Mannion in its entirety and deny Plaintiff's appeal. An appropriate Order shall issue.